UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| LS ASSOCIATES, LLC, IN ITS CAPACITY AS RECEIVER FOR THE ASSETS OF SAINT CATHARINE COLLEGE, INC., | Plaintiff |
| v. | Civil Action No. 3:19-cv-367-RGJ |
| RUNCHERO CORPORATION, INC. and KEVIN RUNNER | Defendants |

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Defendants Runchero Corporation, Inc. ("Runchero") and Kevin Runner ("Runner" together with Runchero, "Defendants") moved *in limine* to exclude evidence or testimony regarding the standard for damages for breach of a real estate contract [DE 78] and evidence or testimony regarding the circumstances of Defendants' breach of contract. [DE 79]. Plaintiff LS Associates, LLC ("Plaintiff") responded [DE 114; DE 115] and Defendants did not reply. Defendants also moved to exclude Plaintiff's witness, Robert Leasure ("Leasure"), from testifying as an expert. [DE 80]. Plaintiff responded [DE 116] and Defendants did not reply. Plaintiff moved *in limine* to exclude evidence or testimony regarding appraisals of the property at issue [DE 82] and evidence or testimony challenging the resale process [DE 83]. Defendants responded [DE 111; DE 112] and Plaintiff did not reply. Plaintiff also moved to exclude testimony from Defendants' expert Steven J. Martens ("Martens"). [DE 84]. Defendants responded [DE 113] and Plaintiff did not reply. Finally, Plaintiff objected to items on Defendants' exhibit and witness lists. [DE 117]. Defendants did not respond.

Briefing is complete, and the matter is ripe. The Court also heard arguments from the parties at the final pretrial conference on February 21, 2023. [DE 119]. For the reasons below, Defendants' Motion *in Limine* on the Measure of Damages [DE 78] is **DENIED**, Defendants' Motion *in Limine* to Exclude Certain Irrelevant Evidence [DE 79] is **DENIED WITHOUT PREJUDICE**, Defendants' Motion *in Limine* to Exclude Rebuttal Testimony of Expert Leasure [DE 80] is **DENIED**, Plaintiff's Motion *in Limine* to Exclude to Exclude Appraisals and Opinion Testimony of Valuation [DE 82] is **GRANTED**, Plaintiff's Motion *in Limine* to Exclude Arguments Challenging Auction Sale Process [DE 83] is **GRANTED in part and DENIED in part**, and Plaintiff's Motion *in Limine* to Exclude Expert Testimony of Martens [DE 84] is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

The facts are detailed in the Court's Order on summary judgment. [DE 62]. The Court granted summary judgment in favor of Plaintiff on all but the damages element of its claim for breach of contract. [*Id.*]. This memorandum opinion and order addresses the remaining issues in the parties' pretrial motions and objections.

## II. LEGAL STANDARD

Federal district courts have the power to exclude irrelevant, inadmissible, or prejudicial evidence *in limine* under their inherent authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984) (citing Fed. R. Evid. 103(c)). Yet, the "better practice" is to defer evidentiary rulings until trial unless the evidence is clearly inadmissible on all potential grounds. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Courts favor this posture so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) (internal citations

omitted). When this Court issues a ruling *in limine*, it is "no more than a preliminary, or advisory, opinion." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984)). Thus, the Court may alter or amend a prior *in limine* ruling at trial. *Luce*, 713 F.2d at 1239.

### III.   DISCUSSION

Arguments from the parties indicated that most of the pretrial motions hinge on the Court's ruling on the motions to exclude expert testimony. Therefore, the Court will first address the motions to exclude Martens' and Leasure's expert testimony.

#### A. Plaintiff's Motion *in Limine* to Exclude Expert Testimony of Martens [DE 84]

Plaintiff argues that Martens' opinions should be excluded because they are irrelevant, false, and unduly prejudicial. [DE 84 at 1643]. Plaintiff also identifies Martens and exhibits included in Martens' expert report in its objection to the Defendants' witness and exhibit list. [DE 117]. Defendants contend that Plaintiff's arguments are without merit. [DE 113].

As a threshold matter, the parties disagree on the applicable standards and questions for the jury to ultimately calculate damages. The Court held that the measure of damages in this instance "is the difference between the contract price and the actual or market value at the time of the breach, *provided actual value is less than the contract price*, and plus any actual and related costs." [DE 62 at 1512 (quoting *Lawson v. Menefee*, 132 S.W.3d 890, 893 (Ky. Ct. App. 2004) (emphasis in original)]. "[T]he amount received from a subsequent sale of real property following repudiation is merely evidence of the actual value at the time of the breach and the relevancy of that evidence would depend on whether the sale occurred under conditions comparable to those of the original contract and within a reasonable time after the breach." *Lawson*, 132 S.W.3d at 893.

3

Therefore, the Court held that an issue of fact remained regarding the final sale was "substantially similar" to the initial sale. [DE 62 at 1513].

Defendants also contend that there is a genuine issue of fact regarding Plaintiff's efforts to mitigate damages. [DE 103 at 1813]. Mitigation was not addressed in the Court's Order on summary judgment. [DE 62]. The party committing the breach bears the burden of proving that the plaintiff failed to mitigate his damages. *Bradley v. D & B Trucks & Equip., LLC*, No. 1:16-CV-00159-HBB, 2018 WL 6706696, at *4 (W.D. Ky. Dec. 20, 2018) (citing *Jones v. Marquis Terminal, Inc.*, 454 S.W.3d 849, 852 (Ky. Ct. App. 2014)). The duty to mitigate arises after a party breaches. *See Am. Towers LLC v. BPI, Inc.*, 130 F. Supp. 3d 1024, 1036 (E.D. Ky. 2015); *see also DeVries Dairy, LLC v. White Eagle Co-op. Ass'n*, 25 F. Supp. 3d 1039 (N.D. Ohio 2014) ("[A] party's duty to mitigate damages does not arise until it knows a breach has actually occurred.")."The duty to mitigate contract damages only requires reasonable care." *Stathis v. Lexington Selected Yearling Sales Co., LLC*, No. 2019-CA-000275-MR, 2020 WL 3401184, at *5 (Ky. Ct. App. June 19, 2020). The Kentucky Supreme Court has explained that one cannot "stand idly by and permit the loss to accrue or increase, then hold him who breached it liable for the loss which he might have prevented by the use of reasonable efforts, expense, and diligence to prevent, or arrest, the loss." *United States Bond & Mortg. Corp. v. Berry*, 61 S.W.2d 293, 298 (Ky. 1933). However, the reasonableness of a party's mitigation is a question of fact. *See Am. Towers LLC v. BPI, Inc.*, 130 F. Supp. 3d 1024, 1036 (E.D. Ky. 2015). Accordingly, the jury must decide whether Plaintiff exercised reasonable care to mitigate damages.

Turning to Martens' testimony, the admissibility of expert testimony is set forth in Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.*, "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir.2002) (alteration and internal quotation marks omitted).

> Under Rule 702 of the Federal Rules of Evidence, 'a proposed expert's opinion is admissible . . . if the opinion satisfies three requirements. First, the witness must be qualified by knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue. Third, the testimony must be reliable.

*Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 376 (6th Cir. 2014) (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008)).

The Court does "not consider 'the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). The Court must determine whether the witness is qualified to offer an opinion on the specific area of expertise required. *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2005 WL 1868046, at * 33 (N.D. Ohio Aug. 8, 2005) ("An expert may be highly qualified to respond to certain questions and to offer certain opinions, but insufficiently qualified to respond to other, related questions, or to opine about other areas of knowledge."). "Under the Federal Rules of Evidence, the only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the

truth. The weight of the expert's testimony must be for the trier of fact." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981).

Along with qualifications, "[t]he Court must determine whether evidence proffered under Rule 702 'both rests on a reliable foundation and is relevant to the task at hand.'" *Powell v. Tosh*, 942 F. Supp. 2d 678, 686 (W.D. Ky. 2013) (quoting *Daubert*, 509 U.S. at 597). To assist with this determination, the Supreme Court in *Daubert* laid out factors[1] for the courts to consider. *Daubert*, 509 U.S. at 592–94. Courts have "stressed, however, that *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. . . . [i]n some cases . . . the factors may be pertinent, while in other cases the relevant reliability concerns may focus upon personal knowledge or experience." *First Tenn. Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001) (finding that the *Daubert* factors "unhelpful" in a case involving "expert testimony derived largely from [expert's] own practical experiences throughout forty years in the banking industry [because] [o]pinions formed in such a manner do not easily lend themselves to scholarly review or to traditional scientific evaluation") (internal citations omitted). "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co.*, 526 U.S. at 139.

Plaintiff argues that Martens' testimony is not reliable. [DE 84 at 1647]. Martens' expert report describes his background and qualifications. [DE 84-1 at 1664]. Martens has experience as a bankruptcy trustee and receiver, so he is familiar with similar sale procedures. [*Id.* at 1665]. Martens also reviewed several documents to form his opinions, including court orders related to

---

[1] The *Daubert* factors include "[w]hether a 'theory or technique . . . can be (and has been) tested'; [w]hether it 'has been subjected to peer review and publication'; [w]hether, in respect to a particular technique, there is a high 'known or potential rate of error' and whether there are 'standards controlling the technique's operation'; and [w]hether the theory or technique enjoys 'general acceptance' within a 'relevant scientific community.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50 (1999) (quoting *Daubert*, 509 U.S. at 592–94).

6

the receivership, real estate purchase agreements, photographs, and emails between the parties. [*Id.* at 1652]. The Court finds that Martens' opinion is reliable, see *Conwood Co.*, 290 F.3d at 792, but the Court must also examine the relevance of Martens' opinions. Plaintiff moves to exclude the following opinions:

> (1) Receiver did not conduct receivership duties in accordance with Court mandate or the reasonable standard of care;
>
> (2) Receiver failed to protect, preserve, maintain and repair the assets;
>
> (3) Receiver failed to develop a marketing plan and failed to properly market the assets;
>
> (4) Receiver failed to obtain fair market value for the property as it existed at the time of the alleged breach of the agreements and failed to mitigate its damages; and
>
> (5) Receiver "spent an unreasonable amount of money from the receivership on its own fees and legal fees."

[DE 84 at 1644 (quoting DE 84-1)]. As explained above, the only remaining issues of fact include: (1) whether the initial sale to Defendants was substantially similar to the final sale and (2) whether Plaintiff exercised reasonable care to mitigate damages after Defendants' breach. The jury must answer these two questions to calculate the final measure of damages.

> i.  *Martens' First and Third Opinions*

Martens' first and third opinions are irrelevant and collaterally estopped by Judge Hale's sale order entered on December 17, 2018 [DE 110-19 "Walker Sale Order")]. There are four requirements to collateral estoppel: (i) an issue must have been raised and litigated in a prior proceeding; (ii) the determination of that issue must have been necessary to the outcome of the prior proceeding; (iii) the prior proceeding must have resulted in a final judgment; and (iv) the party against whom estoppel is sought must have had a full and fair opportunity to litigate in the prior proceeding. *See NLRB v. Kentucky May Coal*, 89 F.3d 1235, 1239 (6th Cir. 1996).

In the Walker Sale Order, the Court held:

> The Receiver has demonstrated a sufficient basis and compelling circumstances requiring it to enter into the Auction APA with the Purchaser (as defined herein) and sell the Real Property. Such action is an appropriate exercise of the Receiver's business judgment and in the best interests of Saint Catharine's estate, Saint Catharine's creditors, and all other parties in interest.

[DE 110-19 at 2306]. The Court also held:

> The Receiver and its professionals marketed the Real Property and conducted the marketing and sale process as set forth in the Auction Motion and in accordance with the Auction Procedures Order. The process set forth in the Auction Procedures Order and the Auction Procedures afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Real Property.

[*Id.* at 2307]. Based on the foregoing, the Court addressed whether the receiver conducted his duties in accordance with the Court mandate or a reasonable standard of care and whether the receiver properly marketed the property. Entry of the Walker Sale Order and its findings was necessary to complete the final sale. [*Id.* at 2306–307]. The Walker Sale Order was the Court's final order approving the sale of the property. [*Id.*]. Defendants, as the original purchasers, had a full and fair opportunity to object to the Walker Sale Order and its findings. Defendants did object on the record to the scheduling order that led to the Walker Sale Order. [DE 110-16 at 2198]. And the Walker Sale Order overruled any pending objections. [DE 110-19 at 2311]. Accordingly, the Walker Sale Order collaterally estops Defendants from now arguing Martens' first and third opinions. *See Kentucky May Coal*, 89 F.3d at 1239.

Even if Defendants were not collaterally estopped, Martens' first and third opinions are irrelevant to either remaining issue. Whether the receiver conducted his duties in accordance with the Court mandate or a reasonable standard of care and whether the receiver properly marketed the property has nothing to do with similarities between the first and final sale. *See Lawson*, 132 S.W.3d at 893. Moreover, neither opinion addresses efforts to mitigate after the breach occurred. Plaintiff's duty to mitigate did not arise until after the breach occurred. *See Am. Towers LLC v.*

8

*BPI, Inc.*, 130 F. Supp. 3d at 1036. But Martens' opinions are based on actions that occurred prior to Defendants' breach. [DE 84-1]. Martens' first and third opinions are, therefore, irrelevant to the task at hand and will be excluded. *See Daubert*, 509 U.S. at 597.

                ii.     *Martens' Second and Fourth Opinions*

Martens' second opinion, that the receiver failed to protect, preserve, maintain and repair the assets, is mostly irrelevant to either remaining issue. Martens' fourth opinion, that the receiver failed to obtain fair market value for the property and failed to mitigate its damages, must be limited for similar reasons. First, Defendants concede that Martens is not offering an opinion on regarding the value of the property. [DE 113 at 2347]. Therefore, the Court will consider Martens' fourth opinion in the context of mitigation and exclude testimony regarding the property's fair market value.

Martens' opinion notes that the property was damaged during the December 2016 removal of personal property. [DE 84-1 at 1657]. Any damage from the removal of personal property would have occurred almost a year prior to Defendants' execution of an "as is" asset purchase agreement [DE 110-3 at 1915] and almost two years before the final sale. [DE 110-19]. Because Defendants agreed to purchase the property "as is," any deterioration between November 2017 and August 31, 2018, when Defendants breached the amended cure agreement, is attributable to Defendants. *See Ferguson v. Cussins*, 713 S.W.2d 5 (Ky. Ct. App. 1986) ("The general rule is that real estate is sold in an "as is" condition, . . . and the purchaser takes the property subject to the existing physical condition."). The receiver had a duty to mitigate damages after Defendants breached on August 31, 2018. *See Am. Towers LLC v. BPI, Inc.*, 130 F. Supp. 3d at 1036. Any of Martens' testimony that Defendants failed to maintain the property between November 1, 2018, and when the Court entered the Walker Sale Order on December 18, 2018, is relevant to mitigation.

9

*See id.* Therefore, Martens' second and fourth opinions will be limited to Defendants' failure to protect, preserve, maintain, and mitigate damages between November 1, 2018, and December 18, 2018. *See Daubert*, 509 U.S. at 597.

Martens' second opinion has nothing to do with similarities in the first and final sale. *See Lawson*, 132 S.W.3d at 893. But his fourth opinion does note characteristics of the second sale, such as the information available to potential purchasers and the speed of the sale. [DE 84-1 at 1662–63]. These opinions may be relevant to the similarities or differences between the first and second sale. *See Daubert*, 509 U.S. at 597. Therefore, the Court will disallow Martens' second opinion and allow Martens' fourth opinion only to the extent it is used to show similarities and differences between the first and second sale.

### iii.     *Martens' Fifth Opinion*

Martens' fifth opinion, that the receiver spent an unreasonable amount of legal fees, is relevant to mitigation. As discussed, Plaintiff had a duty to mitigate damages after Defendants' breach on August 31, 2018. *See Am. Towers LLC v. BPI, Inc.*, 130 F. Supp. 3d at 1036. Here, Plaintiff seeks $313,775.43 in professional fees related to the second sale. [DE 110 at 1895]. The receiver's legal fees incurred prior to Defendants' breach are not relevant. *See Daubert*, 509 U.S. at 597. But Martens may testify to the reasonable of the receiver's fees incurred after Defendants' breach.

The Court will not exclude Marten's testimony in its entirety. However, the Court will limit Martens' testimony and exclude corresponding exhibits identified in Plaintiff's objection [DE 117] as described above. Plaintiff's Motion *in Limine* to Exclude Expert Testimony of Martens [DE 84] is **GRANTED in part and DENIED in part**.

10

### B. Defendants' Motion *in Limine* to Exclude Rebuttal Testimony of Expert Leasure [DE 80]

Defendants move the Court to exclude Leasure's expert rebuttal testimony because it is not reliable. [DE 80]. Defendants contend that Leasure should be barred from testifying on two topics: (1) the property's fair market value and (2) that the receiver properly marketed the property. [*Id.* at 1567–69]. They also argue that Leasure has a personal stake in this litigation, which renders his opinion inadmissible. [*Id.* at 1570]. Plaintiff contends that Leasure was disclosed as a mixed fact and expert witness whose narrow purpose is to rebut Martens' testimony. [DE 116].

The Court held in Section III.A.ii that Martens will not be testifying regarding the property's fair market value. Plaintiff concedes that Leasure will not testify, in his expert opinion, as to the fair market value of the property. [DE 116 at 2385–86]. In Section III.A.i, the Court held that arguments regarding the adequacy of the marketing process are irrelevant and collaterally estopped by the Walker Sale Order. Because Martens will not be permitted to testify regarding the marketing process, Leasure will not be called on to rebut this opinion. Accordingly, these issues are moot.

Finally, Defendants argue the probative value of Leasure's testimony would be outweighed by unfair prejudice. [DE 80 at 1570]. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Leasure was properly disclosed pursuant to Federal Rule of Civil Procedure 26. [DE 80-2]. Defendants cite *Hall v. CIA*, 538 F. Supp. 2d 64 (D.D.C. 2008) to argue that Leasure's expert testimony would be unfairly prejudicial. [DE 80 at 1570–71]. In that case, Hall was a plaintiff pursuing documents under the Freedom of Information Act who filed a declaration relaying a

timeline of events without any supporting documentation. *See* 538 F. Supp. 2d at 66. Hall disclosed himself as an expert in an effort to offer testimony on otherwise inadmissible evidence and personal opinions. *Id.* at 72. The District Court for the District of Columbia held that Hall could not convert his own testimony to expert testimony in order to admit hearsay evidence and a declaration that was without foundation. *See id.* Unlike Hall, Leasure is not a named plaintiff in this case. *See id.* Leasure's expert report is a point-by-point rebuttal of Martens' expert testimony. [DE 80-2]. There is no attempt to use Leasure's expert testimony to admit otherwise inadmissible evidence. The Court cannot find that Leasure's expert testimony, which is limited to rebutting Martens' testimony, would unfairly prejudice Defendants. Therefore, Defendants' Motion *in Limine* to Exclude Rebuttal Testimony of Expert Leasure [DE 80] is **DENIED**.

### C. Defendants' Motion *in Limine* on the Measure of Damages [DE 78]

Defendants move to exclude testimony on (1) any damages theory conflicting with the proper measure of damages and (2) the resale price of the property as being the property's at-breach fair market value. [DE 78 at 1541]. Plaintiff contends that evidence of the sale to the Walker Group is admissible as evidence of damages. [DE 114 at 2374].

As the Court explained in its Order on summary judgment and in Section III.A., the measure of damages "is the difference between the contract price and the actual or market value at the time of the breach . . ." [DE 62 at 1512 (quoting *Lawson v. Menefee*, 132 S.W.3d at 893)]. As became clear at the final pretrial conference on February 21, 2023, the parties do not disagree that this is the standard. The standard articulated in *Lawson* is what was applied on summary judgment and must be applied at trial. [DE 62 at 1512]. Therefore, this issue is has already been decided.

12

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. When calculating damages from the breach of a real estate contract, "the amount received from a subsequent sale of real property following repudiation *is merely evidence* of the actual value at the time of the breach and the relevancy of that evidence would depend on whether the sale occurred under conditions comparable to those of the original contract and within a reasonable time after the breach." *Lawson*, 132 S.W.3d at 893 (emphasis added).

Here, evidence of the sale to the Walker Group and the ultimate sale price are relevant to the question of damages. As the Court held on summary judgment, a question of fact remains regarding the similarities between the initial sale to Defendants and the final sale to the Walker Group. [DE 62 at 1512]. Evidence of the facts and circumstances surrounding the sale to the Walker Group is not only relevant, see Fed. R. Evid. 401, but necessary to determine whether the sales were similar. As the Kentucky Court of Appeals held in *Lawson*, the amount received from a subsequent sale of real property is evidence of the actual value at the time of breach. *See* 132 S.W.3d at 893. "Relevance is to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Albritton v. CVS Caremark Corp.*, No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted)). Therefore, evidence of the sale price to the Walker Group is relevant if Plaintiff can show any similarities between the initial and final sales. *See* Fed. R. Evid. 401(a). The Court will not exclude evidence of the sale to the Walker Group or the purchase price. Defendants' Motion *in Limine* on the Measure of Damages [DE 78] is **DENIED**.

### D. Defendants' Motion *in Limine* to Exclude Certain Irrelevant Evidence [DE 79]

Defendants move to exclude three categories of evidence based on relevance: (1) the manner of, and circumstances that led to, Defendants' breach, (2) Runchero Corporation, Inc.'s corporate structure, and (3) Defendants' related companies or affiliates. [DE 79]. Plaintiff contends that this evidence is substantively relevant and admissible to impeach Kevin Runner's credibility. [DE 115].

Evidence is relevant if under Rule 401 if "it has any tendency to make a fact more or less probable." "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg*, 519 F.2d at 712. Here, Defendants move the Court to exclude broad categories of evidence regarding Defendants' business and the circumstances leading the Defendants' breach. [DE 79]. This evidence may be relevant to questions regarding mitigation and whether the sales were similar. It may also be relevant to impeach Kevin Runner if he testifies. However, the "better practice" is to defer evidentiary rulings on broad categories of evidence until trial. *See Sperberg*, 519 F.2d at 712. The Court can then resolve questions of relevancy and foundation in the proper context. *See Gresh*, 738 F. Supp. 2d at 706. Accordingly, Defendants' Motion *in Limine* to Exclude Certain Irrelevant Evidence [DE 79] is **DENIED WITHOUT PREJUDICE**.

### E. Plaintiff's Motion *in Limine* to Exclude to Exclude Appraisals and Opinion Testimony of Valuation [DE 82]

Plaintiff moves to exclude appraisals and evidence concerning the value of the property. [DE 82]. Plaintiff contends that the appraisals are inadmissible because they are hearsay not subject to an exception and because Defendants did not disclose an expert to testify as to the value of the property. [*Id.* at 1614]. Plaintiff also identified the appraisals in their objection to Defendants' exhibit and witness lists. [DE 117]. Defendants concede that the appraisals are

14

hearsay but argue that they are admissible under the business records exception. [DE 111 at 2331–32]. Defendants also contend that the appraisals are records that Martens relied on while forming opinions related to mitigation and do not constitute expert testimony. [*Id.* at 2332].

Federal Rule of Evidence 801 defines hearsay as a statement "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay may otherwise be admissible under the business records exception if the evidence was (1) "made in the course of a regularly conducted business activity;" (2) "kept in the regular course of [ ] business;" (3) a result of a "regular practice of the business" to create the documents; and (4) "made by a person with knowledge of the transaction or from information transmitted by a person with knowledge." *United States v. Fawaz*, 881 F.2d 259, 266 (6th Cir. 1989) (quoting *Redken Labs., Inc. v. Levin*, 843 F.2d 226, 229 (6th Cir. 1988)). "[A]ll these conditions [must be] shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12)." Fed. R. Evid. 803(6)(D).

Here, the appraisals at issue were prepared by William Moore ("Moore"), a certified real property appraiser at M3 Consulting Services, LLC ("M3"). [DE 111 at 2332]. Defendants have not disclosed Moore or any other witness from M3 who could testify regarding the requirements of the Rule 803(6). [DE 101]. The Tenth Circuit addressed a similar question in *United States v. Irvin*, 682 F.3d 1254 (10th Cir. 2012). In *Irvin*, an appraisal was prepared by Pinnacle Appraisal Group LLC at the request of Meara King, an accounting firm monitoring Jeffrey Miller. *See id.* at 1264. At trial, a partner at Meara King was called upon to provide the necessary foundation and testified that he and his firm regularly ordered, received, and relied upon such appraisals. *See id.* He testified that Meara King routinely worked with Pinnacle in obtaining appraisals and kept a

15

database where the appraisals were stored. *See id.* at 1264–65. The opposing party objected, arguing the appraisal was hearsay. *See id.* at 1265. In response, the United States argued that the appraisal was admissible under the business records exception because the appraisal, Pinnacle's business record, was adopted into the records of Meara King. *See id.* The Tenth Circuit held that the trial court erroneously admitted the appraisal as an "adoptive business record." *Id.*

Defendants have not cited a case where courts in the Sixth Circuit admitted appraisals under the adoptive business records doctrine pursuant to Rule 803(6). [DE 82]. Moreover, the Sixth Circuit has not applied this doctrine where the evidence at issue was hearsay. *See Gerling & Assocs., Inc. v. Gearhouse Broad. Pty. Ltd*, 625 F. App'x 289, 293–94 (6th Cir. 2015). Following the Tenth Circuit's analysis, the Court cannot find that the appraisals are admissible under Rule 803(6). *See Irvin*, 682 F.3d 1264–65.

Defendants also argue that the appraisals are admissible through Martens who relied on them for his opinion on mitigation. [DE 111 at 2332]. Courts have held that appraisals and opinions concerning the value of property require "specialized knowledge" under Rule 702. *See In re Walter B. Scott & Sons, Inc.*, 436 B.R. 582, 588 (Bankr. D. Idaho 2010). Courts in the Sixth Circuit routinely admit appraisal and valuation testimony through the expert who prepared them. *See, e.g.*, *Adler v. Elk Glenn, LLC*, 986 F. Supp. 2d 851 (E.D. Ky. 2013); *Powell v. Tosh*, 942 F. Supp. 2d 678 (W.D. Ky. 2013); *Younglove Const., LLC v. PSD Dev., LLC*, 782 F. Supp. 2d 457 (N.D. Ohio 2011). Therefore, the Court finds that the appraisals and valuation testimony is expert material under Rule 702.

The Eastern District of Kentucky has excluded testimony and exhibits under similar circumstances. *See Haymaker Dev. Co., LLC v. Gatton*, No. CV 5: 20-478-DCR, 2022 WL 1250388 (E.D. Ky. Apr. 27, 2022). In *Haymaker*, the Court excluded testimony and appraisals

16

from a witness who had not been properly disclosed under Rule 26 or Rule 37. *See* 2022 WL 1250388, at *7. Because the properly disclosed expert did not intend to testify regarding the appraisals, the Court held that the only way to admit the appraisals was through the expert who prepared them. *See id.* Otherwise, the appraisals were inadmissible hearsay. *Id.* Had the properly disclosed expert intended to testify regarding the appraisals, then the person who prepared the appraisals should have been disclosed pursuant to Rule 26 or Rule 37. *See id.* Like *Haymaker*, Defendants cannot admit evidence they concede is hearsay without disclosing the proper witness. *See id.* To admit testimony regarding the property's valuation and related appraisals, which are also identified in Plaintiff's objection [DE 117], Defendants were required to disclose Moore or another witness from M3 pursuant to Rule 26. *See id.* However, Defendants did not disclose an expert on appraisals or valuation. Plaintiff's Motion *in Limine* to Exclude to Exclude Appraisals and Opinion Testimony of Valuation [DE 82] is **GRANTED** and corresponding exhibits identified in Plaintiff's objection [DE 117] will be excluded.

### F. Plaintiff's Motion *in Limine* to Exclude Arguments Challenging Auction Sale Process [DE 83]

Plaintiff moves to exclude evidence and arguments challenging the sale to the Walker Group. [DE 83 at 1635]. Plaintiff argues that Defendants are collaterally estopped by the Walker Sale Order. [*Id.*]. In response, Defendants contend that they are not collaterally estopped and that that this testimony is relevant to the comparability of the initial and final sales. [DE 112 at 2335–36].

As the Court held in Section III.A.i., Defendants are collaterally estopped from arguing that the final sale should have been conducted differently or that the receiver failed to follow the Walker Sale Order. Any argument or testimony attacking the findings or holdings in the Walker Sale Order will be excluded. However, Defendants are not collaterally estopped from using

evidence of the final sale to argue that it was dissimilar from the initial sale or to argue that the receiver failed to mitigate after Defendants' breach. *See Kentucky May Coal*, 89 F.3d at 1239. At no point does the Walker Sale Order make a finding as to the similarities between the sales or whether the receiver adequately mitigated damages. [DE 110-19]. Therefore, Plaintiff's Motion *in Limine* to Exclude Arguments Challenging Auction Sale Process [DE 83] is **GRANTED in part and DENIED in part**.

### G. Plaintiff's Objection to Defendants' Exhibit List and Witness List [DE 177]

Plaintiff filed an objection to Defendants' exhibit list and witness list. [DE 117]. Defendants did not respond. As discussed in the preceding Sections, the objections will be resolved consistent with the Court's ruling on the other pretrial motions. The parties agreed to resolve the remaining objections at the pretrial conference on February 21, 2023. To the extent any objections remain unresolved, the Court will address the objections at trial. *See Sperberg*, 519 F.2d at 712.

### IV.  CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. Plaintiff's Motion *in Limine* to Exclude Expert Testimony of Martens [DE 84] is **GRANTED in part and DENIED in part**;

2. Defendants' Motion *in Limine* to Exclude Rebuttal Testimony of Expert Leasure [DE 80] is **DENIED**;

3. Defendants' Motion *in Limine* on the Measure of Damages [DE 78] is **DENIED**;

4. Defendants' Motion *in Limine* to Exclude Certain Irrelevant Evidence [DE 79] is **DENIED WITHOUT PREJUDICE**;

5. Plaintiff's Motion *in Limine* to Exclude Appraisals and Opinion Testimony of Valuation [DE 82] is **GRANTED**;

6. Plaintiff's Motion *in Limine* to Exclude Arguments Challenging Auction Sale Process [DE 83] is **GRANTED in part and DENIED in part**.

Rebecca Grady Jennings, District Judge
United States District Court

March 7, 2023